UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT GREENEVILLE

EMPIRE PETROLEUM PARTNERS,  )
LLC                         )
                            )        NO. 2:14-CV-133
V.                          )
                            )
ALLEN PETROLEUM COMPANY OF  )
EAST TENNESSEE, INC., and C&L )
PARTNERSHIP, LLP            )

MEMORANDUM OPINION

This action is before the United States Magistrate Judge, upon the written consent of

the parties and referral under 28 U.S.C. § 636 by the District Judge with respect to the

Plaintiff's Motion for Summary Judgment [Doc. 20]. Plaintiff filed the subject Motion on

April 2, 2015. On May 1, 2015, a suggestion of bankruptcy was filed with respect to

Defendant Lee Hudson [hereinafter referred to as "Hudson"]. This case was stayed and the

remaining Defendants, Allen Petroleum Company of East Tennessee, Inc., and C&L

Partnership, LLP, [hereinafter referred to as "remaining Defendants"] were given until May

15, 2015, to show why the case should not proceed as to them.

On June 9, 2015, with no further response from the remaining Defendants, the Court

entered an order [Doc. 32] lifting the stay as to the remaining Defendants and stating that

"[a]lthough the Defendants' time to respond expired before the suggestion of bankruptcy was

filed, the Court will allow the remaining Defendants until June 24, 2015, to respond to the

Motion for Summary Judgment."

No response to the Motion has been filed and it is ripe for decision.

Plaintiff is a wholesale distributor of petroleum products, including gasoline and diesel fuel. The remaining Defendants along with Hudson entered into very similar petroleum products supply agreements with Mountain Express Oil Company. The first agreement, dated January 20, 2012, related to "Store 111" located at 2845 Winfield Dunn Parkway in Sevierville, Tennessee. [Doc. 1, Exhibit 1]. This agreement was amended on May 30, 2012. *Id*. The second agreement, dated January 30, 2012, related to "Store 117" located at 1402 Tusculum, Greeneville, Tennessee. [Doc. 1, Exhibit 2]. Both of these supply agreements were assigned to the Plaintiff prior to the losses allegedly incurred in this suit.[1] It is undisputed that the Plaintiff supplied petroleum products to both locations as required by the supply agreements. Defendants also admitted in their answer that they "were unable to pay for all deliveries by Empire at Sites 111 and 117, nor cured any defaults, nor purchased further fuel." [Doc. 9, paragraph 2].

The pertinent contents of the supply agreements are set forth in the Plaintiff's memorandum in support of its motion as follows:

### *Obligation to Pay for Fuel*

Both agreements contain the following provision at Section 3(b) as to the exclusive nature of the sale of fuel at each location:

*Customer covenants and agrees to purchase from [Empire] and offer for sale at the Location only such gasoline, diesel fuel, or other petroleum products as are supplied and delivered by [Empire] for the full duration of the stated term of this Agreement.*[2]

---

1 Mike Diebus, the executive vice president of the plaintiff, filed an affidavit stating that the facts and assertions in Doc. 1, the complaint, were true and accurate.

2 The term of the agreement for Site 111 was 15 years while for Site 117, the term was 11 years.

The supply agreement for Site 117 also contains the following provision at Section 3(b) as to the minimum required volume:

*… and to purchase not less than 40,000 gallons of gasoline and/or diesel fuel per month.*

The supply agreement for Site 117 also contains the following provision at Section 22 relating to "Shortfall Payments":

*In the event that Customer has a shortfall by failing to purchase at least 25,000 gallons of fuel in any given month, Customer shall pay over to [Empire] within seven days of notice by [Empire] of such shortfall, charges in an amount equal to $.04 times the difference between the number of actual gallons purchased and the minimum purchase requirement for such month.*

## *Obligation to Pay for Rebranding Costs and Liquidated Damages*

*The parties hereto agree and stipulate that in the event of default by Customer and early termination of this Agreement, Supplier's actual damages cannot be calculated with a degree of certainty as Supplier is relying upon Customer's continuing purchase of petroleum products throughout the term of this Agreement. The parties further agree that, in addition to the repayment of Supplier's branding investment and reimbursable expenses, a sum equal to $.04 times the previous 12 months gallons purchased times the number of years of the term of this Agreement, is a reasonable pre-estimate of damages that may be suffered by Supplier in the event of such breach and termination. Provided further, said sum of liquidated damages shall be reduced by an amount equal to the amount of liquidated damages divided by the number of years of the term of this Agreement, multiplied by the number of each fully expired year, prior to Customer's default, during the term of this Agreement.*

*In addition to the foregoing, in the event of termination, Customer shall pay to [Empire] the cost of "debranding" the Location. "Debranding" is hereby defined as the removal of all brand signage and brand color scheme at the Location.*

## *Attorneys' Fees and Litigation Expenses*

*In the event it becomes necessary for either party to employ the services of an attorney to enforce any aspect of this Agreement, the losing party agrees to pay the prevailing party actual attorneys' fees and costs of litigation.*

## *Choice of Law*

*This Agreement has been entered into in and shall be construed under the laws of the State of Georgia.*

3

[Doc. 26, pgs. 4-6].

Summary judgment is proper where the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue of material fact and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). In ruling on a motion for summary judgment, the Court must view the facts contained in the record and all inferences that can be drawn from those facts in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Nat'l Satellite Sports, Inc. v. Eliadis, Inc.*, 253 F.3d 900, 907 (6th Cir. 2001). The Court cannot weigh the evidence, judge the credibility of witnesses, or determine the truth of any matter in dispute. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).

The moving party bears the initial burden of demonstrating that no genuine issue of material fact exists. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). To refute such a showing, the non-moving party must present some significant, probative evidence indicating the necessity of a trial for resolving a material factual dispute. *Id.* at 322. A mere scintilla of evidence is not enough. *Anderson*, 477 U.S. at 252; *McClain v. Ontario, Ltd.*, 244 F.3d 797, 800 (6th Cir. 2000). This Court's role is limited to determining whether the case contains sufficient evidence from which a jury could reasonably find for the non-moving party. *Anderson*, 477 U.S. at 248-49; *Nat'l Satellite Sports*, 253 F.3d at 907. If the non-moving party fails to make a sufficient showing on an essential element of its case with respect to which it has the burden of proof, the moving party is entitled to summary judgment. *Celotex*, 477 U.S. at 323. If this Court concludes that a fair-minded jury could not return a verdict in

4

favor of the non-moving party based on the evidence presented, it may enter a summary judgment. *Anderson*, 477 U.S. at 251-52; *Lansing Dairy, Inc. v. Espy*, 39 F.3d 1339, 1347 (6th Cir. 1994).

The party opposing a Rule 56 motion may not simply rest on the mere allegations or denials contained in the party's pleadings. *Anderson*, 477 U.S. at 256. Instead, an opposing party must affirmatively present competent evidence sufficient to establish a genuine issue of material fact necessitating the trial of that issue. *Id.* Merely alleging that a factual dispute exists cannot defeat a properly supported motion for summary judgment. *Id.* A genuine issue for trial is not established by evidence that is merely colorable, or by factual disputes that are irrelevant or unnecessary. *Id.* at 248-52.

Under Georgia law, Plaintiff is obligated to prove that the parties had a valid contract and that the parties mutually assented to all of the essential terms at issue. *Lamb v. Decatur Federal Sav. & Loan Ass'n*, 411 S.E.2d 527 (Ga. App. 1991). Also, it must then show that it performed its obligations, that the other side breached the contract, and prove the damages from the breach. *Layer v. Clipper Petroleum, Inc.*, 735 S.E.2d 65 (Ga App. 2012).

Based upon the answer, and the unrebutted affidavit of Plaintiff's Executive Vice President, Mike Diebus, the Court finds that the Plaintiff has proven the existence of a valid contract, that the parties mutually assented to all of the essential terms, that the Plaintiff performed its obligations under the contract, that the remaining Defendants breached the contract, and as a result, the Plaintiff has been damaged.

5

The agreement also contains a liquidated damages provision and provides a formula for determining the amount. Georgia law provides that such liquidated provisions are enforceable if (1) the injury caused by the breach of contract is difficult or impossible to accurately estimate; (2) the parties intended to provide for damages rather than a penalty; and (3) the sum stipulated is a reasonable pre-estimate of the probable loss. *Southeastern Land Fund v. Real Estate World*, 237 Ga. 227, 230 (1976). The burden is on the defaulting party to prove that a liquidated damages clause is an unenforceable penalty. *Joyce's Submarine Sandwiches v. Cal. Public Employees' Retirement System*, 395 S.E.2d 257 (Ga. App. 1990). The enforceability of a liquidated damages clause is a question of law. *Jamsky v. HPSC, Inc.*, 519 S.E.2d 246 (Ga. App. 1999).

The Court finds that the defaulting party has not come forward with any evidence on any of these three criteria. The Court finds that the injury in this circumstance was difficult to accurately estimate. The Court further finds that the parties intended to provide for damages rather than a penalty based on how the damages were calculated. Finally as to this issue, the court finds that the sum stipulated is a reasonable pre-estimate of the probable loss. This was an arm's length transaction. The remaining Defendants, along with Defendant Hudson, entered into not one, but two such agreements several months apart with this same provision. Thus, the Court finds the liquidated damages provision to be enforceable.

Having found a valid contract and a breach by the remaining Defendants, the next issue is one of damages. Based on the terms of the agreement and the affidavit of Mr. Diebus, the Court finds that the remaining Defendants are liable to the Plaintiff for fuel they

6

ordered and received but for which they did not pay in the amount of $149,877.00. Similarly, the Court finds that the remaining Defendants are liable to the Plaintiff for rebranding costs in the amount of $203,873.00. The Court also accepts the liquidated damages calculations under the supply agreement provisions and the affidavit of Mr. Diebus and finds that the remaining Defendants are liable to the Plaintiff for $578,954.00 in liquidated damages.[3]

Finally, the Plaintiff asserts that it is entitled to reasonable attorney's fees under the agreements. Clearly, Plaintiff is the "prevailing party" under the clause in the agreements, and the remaining Defendants are the "losing party." Accordingly, the Court finds that the remaining Defendants are liable to the plaintiff for its "actual attorney's fees and costs of litigation" as specified in the agreements.

The Plaintiff shall submit an affidavit regarding the amount of attorney's fees and costs of litigation within 20 days of the entry of this Memorandum Opinion. After deciding the amount of such fees and costs for which the remaining Defendants are liable, the Court will enter a final judgment.

SO ORDERED:

s/ Clifton L. Corker
UNITED STATES MAGISTRATE JUDGE

---

3 Mr. Mike Diebus' affidavit, while he calculates the total amount of liquidated damages correctly, actually mistakenly refers to Site 111 when he meant to refer to Site 117 and vice-versa. (Doc. 21-1, pageID# 113). That error does not affect the total liquidated damages calculation.